Justice Scalia,
concurring in the judgment.
The Court’s admirably careful textual analysis, ante, at 313-319, demonstrates that the term “foreign state” in the provision “a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States,” 28 U. S. C. § 1604, does not include foreign officials. Yet the Court insists on adding legislative history to its analysis. I could understand that (though not agree with it) if, in the absence of supposed legislative-history support, the Court would reach a different result. Or even if there was something in the legislative history that clearly contradicted the Court’s result, and had to be explained away. That is not the situation here (or at least the Court’s opinion does not think it to be so). The Court assures us, however (if this could be thought assurance), that legislative history is “ 'not generally so misleading’ ” that it should “ 'never’ ” be used. *327 Ante, at 316, n. 9 (quoting Wisconsin Public Intervenor v. Mortier, 501 U. S. 597, 611-612, n. 4 (1991)). Surely that is damning by faint praise. And the Court’s mention of the past practice of using legislative history, ante, at 316, n. 9, does not support the Court’s use of it today. The past practice was “not the practice of utilizing legislative history for the purpose of giving authoritative content to the meaning of a statutory text,” Mortier, supra, at 622 (Scalia, J., concurring in judgment).
The Court’s introduction of legislative history serves no purpose except needlessly to inject into the opinion a mode of analysis that not all of the Justices consider valid. And it does so, to boot, in a fashion that does not isolate the superfluous legislative history in a section that those of us who disagree categorically with its use, or at least disagree with its superfluous use, can decline to join. I therefore do not join the opinion, and concur only in the result.
The Court relies on legislative history to support three of its positions. First, after explaining why the phrase “agency or instrumentality” in the definition of “foreign state,” see § 1603(a), (b), does not refer to natural persons, ante, at 315-318, the Court says “[n]or does anything in the legislative history suggest that Congress intended the term ‘agency or instrumentality’ to include individuals,” ante, at 316, n. 9. According to the Court, “the legislative history, like the statute, speaks in terms of entities.” Ibid. Apparently, the legislative history must be consulted, not to show that it supports the Court’s textual analysis, or even to explain why its seeming contradiction of the Court’s analysis is inconsequential, but to show nothing more than that it contains the same ambiguous language as the text. This is beyond all reason.
Second, after concluding its review of the statute’s text, the Court states that the “legislative history makes clear that Congress did not intend the [Foreign Sovereign Immunities Act of 1976] to address position-based individual im *328 munities such as diplomatic and consular immunity,” ante, at 319, n. 12. See also ante, at 323. It cites for this proposition a House Committee Report that we have no reason to believe was read (much less approved) by the Senate — or, indeed, by the Members of the House who were not on the Committee — or even, for that matter, by the members of the Committee, who never voted on the Report. In any case, the quoted excerpt does not address “position-based individual immunities” in general but only “diplomatic and consular immunity,” which is not at issue here. Unless diplomatic and consular immunity, on the one hand, and, on the other hand, what is at issue here — state-agent immunity — are always treated the same (which I doubt and the Court does not attempt to establish), the passage contributes nothing to analysis of the present case.
The same footnote also quotes a portion of the same House Report as follows:
“‘The bill does not attempt to deal with questions of discovery.... [I]f a plaintiff sought to depose a diplomat in the United States or a high-ranking official of a foreign government, diplomatic and official immunity would apply.’” Ante, at 319, n. 12.
If anything, this passage cuts against the Court’s result. The two sentences omitted from the above quotation read as follows:
“Existing law appears to be adequate in this area. For example, if a private plaintiff sought the production of sensitive governmental documents of a foreign state, concepts of governmental privilege would apply.” H. R. Rep. No. 94-1487, p. 23 (1976).
Thus, the House Report makes it clear that the bill’s failure to deal with discovery applies to both discovery against sovereigns and discovery against foreign officials. But the latter would have been unnecessary if the bill dealt only with sovereigns. The implication (if any) is that the bill’s provi *329 sions regarding immunity from suit apply to both sovereigns and foreign officials.
Third, and finally, the Court points to legislative history to establish the purpose of the statute. See ante, at 323, and n. 19. This is particularly puzzling, because the enacted statutory text itself includes findings and a declaration of purpose — the very same purpose (surprise!) that the Court finds evidenced in the legislative history. See 28 U. S. C. § 1602. To make matters worse, the Court itself notes this statutory declaration of purpose twice earlier, in the body of its opinion, see ante, at 313, 319-320. If those textual references to the statute itself were deleted, the footnoted citation of legislative history would at least perform some function. As it is, however, it adds nothing except the demonstration of assiduous law-clerk research.
It should be no cause for wonder that, upon careful examination, all of the opinion’s excerpts from legislative history turn out to be, at best, nonprobative or entirely duplicative of text. After all, legislative history is almost never the real reason for the Court’s decision — and makeweights do not deserve a lot of the Court’s time.